UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SPUR TRACK PROPERTIES, LLC;
NARRAGANSETT PROMOTIONS, INC.;
and STEVEN MEDEIROS,
*Plaintiffs,*

v.   C.A. No.: 1:24-cv-00010-MSM-PAS

THE CITY OF PROVIDENCE; and
SARA SILVERIA in her capacity as
Finance Director of the City of Providence,
*Defendants.*

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

Now come the Defendants in the above captioned matter and hereby submit this memorandum of law in support of their objection to Plaintiffs' motion for an *ex parte* temporary restraining order ("TRO").

**I.   Introduction**

Plaintiffs filed suit against the Defendants in this Honorable Court on or about January 5, 2024. See E.C.F. 1. Defendants were served on or about February 26, 2024, and the Defendants timely answered Plaintiffs' Complaint. See E.C.F. 8. Plaintiffs' Complaint alleges the following counts: (1) Fourteenth Amendment – Denial of Equal Protection in violation of 42 U.S.C. § 1983, and, (2) Deprivation of Plaintiffs' Civil Rights in violation of 42 U.S.C. § 1983.

On March 14, 2024, the Plaintiffs filed a motion for an *ex parte* temporary restraining order ("TRO"). The Defendants immediately objected and requested an opportunity for a hearing. The instant memorandum followed.

1

## II. Standard

"The basic four-factor legal standard is the same for a temporary restraining order and a preliminary injunction. That is, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld; (3) a favorable balance of hardships; and (4) a fit (or lack of friction) between the injunction and the public interest." Harris v. Wall, 217 F. Supp. 3d 541, 552–53 (D.R.I. 2016) (citing Nieves–Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003) (preliminary injunction); Brennan, 2009 WL 196204, at *2 (temporary restraining order). A plaintiff seeking an interim injunction bears the burden of demonstrating that each of the four factors weigh in his favor. Letourneau v. Aul, 2015 WL 5167854, at *2.

## III. Argument

### a. This Court should deny Plaintiffs' motion for a temporary restraining order because they do not have a likelihood of success on the merits

"The four factors are not weighted equally; 'likelihood of success is the main bearing wall of this framework' and of primary importance." Harris v. Wall, 217 F. Supp. 3d 541, 553 (D.R.I. 2016) citing W Holding Co. v. AIG Ins. Co.–Puerto Rico, 748 F.3d 377, 383 (1st Cir. 2014); Flores v. Wall, No. CA 11–69 M, 2012 WL 4471103, at *3 (D.R.I. Sept. 5, 2012); see Letourneau, 2015 WL 5167854, at *2. Further, "[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." Id. citing Esso Standard Oil Co. (Puerto Rico) v. Monroig–Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

#### i. Plaintiffs do not have a likelihood of success on the merits because they lack the standing to bring Count I, which alleges violations of the constitutional rights of third parties

Standing is a threshold question in every case; "if a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case." Bos. All.

of Gay, Lesbian, Bisexual & Transgender Youth v. United States Dep't of Health & Hum. Servs., 557 F. Supp. 3d 224, 234 (D. Mass. 2021). Count I of Plaintiffs' Complaint alleges "violations of the Fourteenth Amendment, Denial of Equal Protection in violation of 42 U.S.C. § 1983." The crux of the Plaintiffs' argument is the Providence Police Department ("PPD") is discriminating against Plaintiffs' "customers in violation of their Constitutional rights" on the "basis of sexual orientation." See E.C.F. 1 at 38 and 39. However, Plaintiffs do not have standing to assert the constitutional rights of their customers.

Plaintiffs are bringing claims of constitutional violations on behalf of their patrons. The United States Supreme Court has recognized the right of litigants to bring actions on behalf of third parties provided three important criteria are satisfied:

> The litigant must have suffered an injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute, the litigant must have a close relation to the third party, and there must exist some hindrance to the third party's ability to protect his or her own interests.

Powers v. Ohio, 499 U.S. 400, 410–11, 111 S. Ct. 1364, 1370–71, 113 L. Ed. 2d 411(1991)(internal citations omitted).

It seems quite a stretch for Plaintiffs to assert that they have the requisite "close relationship" with their patrons to establish third party standing. See Singleton v. Wulff, 428 U.S. 106, 112, 96 S. Ct. 2868, 2873, 49 L. Ed. 2d 826 (1976)(finding that a woman had a sufficiently close relationship with a physician necessary to obtain an abortion). Putting the second prong aside, Plaintiffs must meet all three (3) prongs to establish third-party standing. See Ricci v. Okin, 770 F. Supp. 2d 438, 443 (D. Mass. 2011)("The Union has not satisfied the requirements of third-party standing. Assuming without deciding that there exist both an injury and sufficient relationship, the Union falters on the third requirement.") Importantly, Plaintiffs are unable to successfully establish the third prong of third party standing because there is absolutely no

hinderance on the Plaintiffs' patrons' part to bring a civil rights case against the City on their own, should they believe their civil rights have indeed been violated. Id. Therefore, Plaintiffs do not have a likelihood of success on the merits because they lack standing to bring suit on behalf of their patrons and therefore, the motion for a TRO should be denied.

> **ii. Plaintiffs do not have a likelihood of success on the merits because they cannot establish the basic elements of a violation of Equal Protection**

Plaintiffs allege that the actions of the Providence Police Department amount to constitutional violations on behalf of its customers and itself. In Count I Plaintiffs allege violations of equal protection on behalf of Plaintiffs' "customers." See E.C.F. 1 at 39. In Count II Plaintiffs allege that "meritless enforcement activity" violates the Plaintiffs' First and Fourteenth Amendment rights. For the following reasons, Plaintiffs do not have a likelihood of success on the merits on either count.

Putting aside the standing issue addressed *supra*, Plaintiffs cannot demonstrate a likelihood of success on the merits of their Equal Protection claims. It is generally true that "[u]nder the Equal Protection Clause, persons similarly situated must be accorded similar governmental treatment." Aponte-Ramos v. Alvarez-Rubio, 783 F.3d 905, 908 (1st Cir. 2015) citing Marrero–Gutierrez v. Molina, 491 F.3d 1, 9 (1st Cir.2007). "In order to prove an Equal Protection violation, plaintiffs must establish that, **compared with other similarly situated individuals**, they were "selectively treated...based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Id. (emphasis added) (quoting Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir.1995)) (internal quotation marks omitted).

While Plaintiffs have listed—both in their Complaint and in their motion for TRO—allegations that patrons have been pulled over after leaving the establishment, or that PPD officers have driven through their parking lot, Plaintiffs have offered **absolutely no comparator evidence** to show that the establishment or its customers are treated differently than any other person or establishment within the City of Providence. How can Plaintiffs be successful on the merits of their Complaint—and therefore successful on the instant motion—if they have provided no evidence by which to compare the activity of the PPD on and around their property as opposed to anywhere else in the City under similar circumstances with similarly situated individuals?

Moreover, the Defendants can and will establish that the area of the City where Plaintiffs' business is located is indeed a high crime area that warrants police presence. Thus, any alleged treatment of plaintiffs has nothing to do with an improper purpose as noted in Rubinovitz, but instead an entirely valid purpose, that being addressing the profusion of illegal behavior surrounding this immediate area. A review of police incident reports and body camera footage from traffic stops for the relevant time matching the time period in the Plaintiffs' complaint and in the relevant area[1] demonstrates multiple arrests for drugs, malicious damage, calls for threats, and numerous articulable traffic violations and stops. The same are summarized herein:

| Date | Case No. | Location | Summary |
|---|---|---|---|
| 4/2/23 2:49 am | 2023-23779 | 257 Allens Avenue | Hit and run in the parking lot. |
| 4/28/23 10:30 am | 2023-31148 | 257 Allens Avenue (dispatch to Poe Street/O'Connell Street) | Call with a complaint that an employee and apparent owner of the club, Mr. Nevarez, was harassing person by banging on windows and obstructing travel. |

---

[1] The "relevant area" refers to O'Connell Street bordering to the north and Lehigh Street to the south, with a vast majority of the incidents occurring on the northern-most streets immediately adjacent to the Megaplex property and parking lot, namely on O'Connell Street, Poe Street, Bay Street, and Allens Avenue.

| | | | |
|---|---|---|---|
| 5/22/23 5:37 am | 2023-398407 | 257 Allens Avenue | Stolen auto (at Megaplex[2]). |
| 6/12/23 5:10 pm | 2023-45258 | 257 Allens Avenue | Traffic Stop (across the street from Wonderland). Arrest for methamphetamine. |
| 7/5/23 | 2023-501557 | 257 Allens Avenue | Theft (Megaplex). Report filed for jewelry stolen while patron was at Megaplex. |
| 7/9/23 1:39 am | 2023-53520 | 257 Allens Avenue | False alarm (at Wonderland). Female pulled the fire alarm in attempt to get into the rear of the club. Arrested and charged. |
| 7/11/23 8:25 pm | 2023-54302 | O'Connell Street/Eddy Street | Traffic Stop. Pulled over for illegal tint. The driver did not have a valid driver's license. |
| 7/11/23 11:17 pm | 2023-54344 | Oxford Street/Poe Street | Traffic Stop where Officer tells a parked car to move along. |
| 8/12/23 | 2023-64258 | 257 Allens Avenue | Request for no trespass. Call by employee, and apparent owner Mr. Nevarez, requesting to no trespass person from Megaplex, Bull Pen and Lingerie Store. |
| 8/28/23 5:53 pm | 2023-69563 | Bay Street/Allens Avenue | Traffic Stop. Megaplex parking lot. The license plate on the driver's car was worn off and illegible. Both the driver and passenger had suspended licenses. |
| 9/29/23 8:00 pm | 2023-79881 | Poe Street/Warren Way | Traffic Stop (illegal parking on Warren Way). Arrests for methamphetamine and ketamine. |
| 10/6/23 5:55 pm | 2023-82140 | 257 Allens Avenue | Malicious damage. Car window smashed and jewelry stolen. |
| 10/8/23 2:30 am | 2023-83024 | 257 Allens Avenue | Malicious damage. Smash car window and stolen property. |
| 10/18/23 6:48 pm | 2023-85840 | Oxford Street/Poe Street | Traffic stop. The driver pulled out in front of another car almost got in an accident. |
| 10/18/23 9:05 pm | 2023-85868 | Poe Street/Swan Street | Traffic stop. Two people sitting in a parked car for a long period of time. Officer checked the driver's license and registration. No further action taken. |
| 10/27/23 4:58 pm | 2023-88494 | Poe Street/ O'Connell Street | Traffic Stop. Parking lot in rear of 245 Allens Ave. Arrests for methamphetamine. |
| 10/23/23 5:12 pm | 2023-87344 | Poe Street/Lehigh Street | Traffic Stop. Arrests for cocaine. |
| 10/24/23 7:11 pm | 2023-87668 | Poe Street/ O'Connell Street | Traffic stop. Car parked for a long period of time on the side of the road. The Driver said he was watching a movie. Police checked his ID and registration. No further action taken. |

---

[2] It should be further noted that, Megaplex, Wonderland, Lingerie Store, Silhouettes, Bull Pen are all located on the same two blocks bordered by Allens Avenue, O'Connell Street, Poe Street and Swan Street, with Bay Street running through the center.

| Date/Time | Case # | Location | Description |
|---|---|---|---|
| 10/29/23 8:10 am | 2023-89183 | 257 Allens Avenue | Malicious damage, Smash car window. Stolen property |
| 10/30/23 2:49 pm | 2023-89496 | 257 Allens Avenue | A female was assaulted. |
| 11/10/23 7:33 pm | 2023-92718 | Poe Street/Bay Street | Traffic Stop. Man parked on the side of the road with no shirt on. Officers spoke with him and let him leave. |
| 11/11/23 2:38 am | 2023-92844 | Poe Street/Oxford Street | Traffic stop. Person sleeping in driver's seat. |
| 11/13/23 2:19 am | 2023-93654 | Poe Street/O'Connell Street | Traffic Stop (Bull Pen at Bay Street). Arrest for methamphetamine. |
| 11/15/23 9:44 pm | 2023-94150 | Allens Avenue/Oxford Street | Traffic stop. Arrests for cocaine. |
| 11/19/23 8:53 pm | 2023-95332 | Poe Street/O'Connell Street | Traffic stop. Two people parked in lot for a long period of time. |
| 11/22/23 12:06 am | 2023-95965 | Allens Avenue/O'Connell Street | Traffic stop. Vehicle was veering over the line double yellow line and the license plates are not registered. |
| 12/10/23 12:08 am | 2023-100788 | 257 Allens Avenue | Malicious damage. Window was smashed. |
| 12/10/23 12:13 am | 2023-100790 | 257 Allens Avenue | Traffic stop. |
| 12/10/23 2:13 am | 2023-100832 | Poe Street/O'Connell Street | Traffic stop. Illegal tint. |
| 12/11/23 1:08 am | 2023-101039 | Poe Street/Oxford Street | Traffic stop. Arrest for cocaine. |
| 12/21/24 8:34 pm | 2023-103966 | Lehigh Street/Poe Street | Traffic stop. |
| 12/24/23 12:43 am | 2023-104530 | Swan Street/Poe Street | Traffic stop. Arrest for cocaine |
| 1/3/24 12:54 am | 2024-526 | Allens Avenue/O'Connell Street | Traffic stop. Ran stop sign and a suspended registration. |
| 1/12/24 5:42 pm | 2024-3002 | Allens Avenue/Swan Street | Traffic stop. Plates don't match the car. |
| 1/13/24 6:05 pm | 2023-3340 | 257 Allens Avenue | Person called was receiving threats. Manager of Megaplex threatened to shoot a person outside leaning on the owner's car. |
| 1/13/24 8:24 pm | 2024-3374 | Poe Street/Oxford Street | Traffic stop. |

| 1/19/24 11:30 pm | 2024-4873 | Poe Street/O'Connell Street | Traffic stop. Arrest for cocaine. |
|---|---|---|---|
| 1/22/24 12:35 am | 2024-5362 | 257 Allens Avenue | Traffic stop. Car sitting parked in lot. Passenger gave the police fake name later admitted it and then the car was searched. |
| 1/26/24 1:56 am | 2024-6425 | Swan Street/Allens Avenue | Traffic stop. Ran stop sign. Gave consent to search with no results. |
| 1/27/24 7:09 pm | 2024-6893 | Poe Street/Bay Street | Traffic stop. Arrest for amphetamine. |
| 2/3/24 9:41 pm | 2024-8753 | Oxford Street/Poe Street | Traffic stop. Ran a stop sign. Driver admitted there was a knife in the car and gave consent to search. |

It is clear that this particular area of the City has a significant amount of criminal activity which would warrant a police presence. It should also be noted that there is no reasonable expectation of privacy in a commercial parking lot that is open to the public ("defendants did not entertain a legitimate expectation of privacy in [business'] back parking lot…" United States v. Reed, 733 F.2d 492, 500 (8th Cir. 1984)).[3]

---

[3]    Similarly, and to the extent the Plaintiffs try to argue law enforcement cannot be on the subject property, courts have recognized that regardless of whether an entry is in fact a trespass by police, the relevant inquiry instead is whether there has been a Fourth amendment violation. U.S. v. Cruz Pagan, 537 F.2d 554, 558 (1st Cir. 1976). In that regard, courts have recognized that no Fourth Amendment search occurs when police officers who enter private property restrict their movements to those areas generally made accessible to visitors—such as driveways, walkways, or similar passageways; United States v. Ventling, 678 F.2d 63, 66 (8th Cir.1982) (no legitimate privacy expectation in residential driveway accessible to and from public highway); United States v. Magana, 512 F.2d 1169, 1171 (9th Cir.1975). This lack of an expectation of privacy extends to commercial parking lots. United States v. Edmonds, 611 F.2d 1386, 1388 (5th Cir.1980) (no legitimate privacy expectation in loading dock/parking lot area of business premises); U.S. v. Evans, No. 1:13CR00090 SNLJ, 2014 WL 4114411, at *5 (E.D. MO. Aug. 18, 2014) ("A commercial area open to the public is not an area in which even the property owner of the commercial area can claim a reasonable expectation of privacy.") citing U.S. v. Dunn, 480 U.S. 294, 316 (1987). Underlying these decisions is Katz's teaching that, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not the subject of Fourth Amendment protection." 389 U.S. at 351, 88 S.Ct. at 511." United States v. Reed, 733 F.2d 492, 501 (8th Cir. 1984) (no reasonable expectation of privacy in commercial parking lot). Police furthermore in this case are acting well within their jurisdictional authority, namely to the physical spaces comprising the City of Providence. State ex rel. Town of Portsmouth v. Hagan, 819 A.2d 1256, 1258-9 (R.I.

Therefore, not only have the Plaintiffs failed at putting forth evidence to demonstrate a likelihood of success on the merits of their equal protection claim, but importantly, the City of Providence can demonstrate a significant public safety interest in maintaining a police presence in the specific area at issue.

### iii. Plaintiffs do not have a likelihood of success on the merits because they cannot establish a violation of the First Amendment

Plaintiffs are also unable to demonstrate a likelihood of success on the merits as to Count II. There Plaintiffs allege that "[b]y undertaking meritless enforcement activity against Plaintiffs, Defendants have unlawfully and substantially deprived Plaintiffs of rights secured by the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983." E.C.F. 1 at ¶44. However, the content neutral activity of the police serves a substantial government interest and therefore overcomes a First Amendment challenge.

In City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 425, 122 S. Ct. 1728, 1728, 152 L. Ed. 2d 670 (2002), the City of Los Angeles enacted an ordinance that prohibited "more than one adult entertainment business in the same building." The City enacted the ordinance based on a study concluding that "concentrations of adult entertainment establishments are associated with higher crime rates in surrounding communities." Id. "Respondents, two adult establishments that openly operate combined bookstores/video arcades in violation [of the ordinance] sued under 42 U.S.C. § 1983 for declaratory and injunctive relief, alleging that the ordinance, on its face, violates the First Amendment." Id.

There, the Court examined the Los Angeles Ordinance under intermediate scrutiny because it deemed the statute to be content-neutral. Id. ("Renton requires that municipal ordinances receive

---

2003) (generally speaking, an officer's law enforcement authority is limited to his or her municipality).

9

only intermediate scrutiny if they are content neutral."475 U.S., at 48–50, 106 S.Ct. 925 citing City of Renton v. Playtime Theaters, Inc. et al., 106 S.Ct. 925.). The Court found that "reducing crime is a substantial government interest and that the police department report's conclusions regarding crime patterns may reasonably be relied upon to overcome summary judgment…" Alameda Books, Inc., 535 US at 435-36.

In the instant matter Plaintiffs argue that the PPD's activity around its business violates the First Amendment. However, as demonstrated *supra* there is a plethora of criminal activity, including traffic violations, drug possession, and the like, occurring in the subject parking lot and the surrounding area. The activity of the PPD patrolling near and around Plaintiffs' business is clearly a content neutral activity and completely unrelated to the content of any speech. And as the Court found in Alameda Books, Inc., "reducing crime is a substantial government interest." Id. Furthermore, the United States Supreme Court has stated its "settled position that municipalities must be given a "'reasonable opportunity to experiment with solutions'" to address the secondary effects of protected speech. Alameda Books, Inc., 535 U.S. at 439 citing City of Renton v. Playtime Theaters, Inc. et al., 106 S.Ct. 925. Therefore, Plaintiffs cannot establish that the actions of the PPD violate the First Amendment. Importantly, Plaintiff has failed to put forth any facts or actual evidence, in the complaint, affidavits, or otherwise, to suggest that the police department's enforcement in this area is related in any way whatsoever to the alleged speech of the establishment.

### b. Plaintiffs will not suffer irreparable harm if a TRO is not granted

Irreparable harm is measured on "a sliding scale, working in conjunction with a moving party's likelihood of success on the merits, such that the strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown." Harris v. Wall,

217 F. Supp. 3d 541, 553 (D.R.I. 2016) citing Braintree Labs., Inc. v. Citigroup Glob. Markets Inc., 622 F.3d 36, 42–43 (1st Cir. 2010).

In the instant matter, Plaintiffs are seeking an order preventing the PPD from entering its parking lot and the area known as Bay Street. If the Court grants the Plaintiffs its requested relief, the risk of harm will be to the City of Providence **and its citizens**, not the Plaintiffs. Prohibiting the PPD from entering the subject parking lot and the Bay Street area would result in unfettered access to engage in criminal activity within the parking lot and surrounding area of this business. While "one does not have to establish a life or death injury to establish irreparable harm" that might very well be the unintended result if a TRO is granted in this matter. Faulkner v. N. Carolina Dep't of Corr., 428 F. Supp. 100, 103 (W.D.N.C. 1977).

### c. Balancing of the equities and the effect on the public interest will not be served by the issuance of a TRO

> Interim injunctive relief is typically used to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs. By contrast, an injunction that alters the status quo, which is what Plaintiff is seeking, is atypical. Designated as a mandatory injunction, such relief normally should be granted only in those circumstances when the exigencies of the situation demand such relief.

Harris v. Wall, 217 F. Supp. 3d 541, 553 (D.R.I. 2016) (internal quotations and citations omitted).

Plaintiffs allege that their requested relief "imposes no hardship on the Defendants and/or the PPD." However, the instant request would open the City of Providence and its citizens up to unbounded criminal activity. It appears that such order directing police to in fact not police a certain area would be unprecedented. It would put the citizens of the City, as well as patrons that frequent the City, at risk. Plaintiffs' request "alters the status quo" and therefore should only be granted in extreme and unique circumstances. Plaintiffs cannot meet this burden.

11

## IV. Conclusion

WEREFORE, for the reasons set forth herein as well as any other reason which may be elicited during a hearing on this matter, Defendants respectfully request that Plaintiffs' motion for TRO be denied.

DEFENDANTS,
THE CITY OF PROVIDENCE; and
SARA SILVERIA in her capacity as
Finance Director of the City of Providence,

By their Attorneys,

JEFF DANA
CITY SOLICITOR

/s/ Steven B. Nelson
Steven B. Nelson (#8142)
Senior Assistant City Solicitor
444 Westminster Street, Suite 220
Providence, Rhode Island 02903
401-680-5333 (tel)
401-680-5520 (fax)
snelson@providenceri.gov

/s/ Jillian H. Barker
Jillian H. Barker (#8353)
Senior Assistant City Solicitor
jbarker@providenceri.gov

## CERTIFICATION

I hereby certify that on this 19th day of March 2024, I caused this document to be filed and served on the following attorneys electronically and certify that it is available for viewing and downloading from the ECF system:

Joseph P. Carnevale, Esq.
Jcarnevale@savagelawpartners.com

/s/ Jillian H. Barker