## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| SPUR TRACK PROPERTIES, LLC; NARRAGANSETT PROMOTIONS, INC.; ADALBERTO ALEVAREZ; and STEVEN MEDEIROS,<br><br>   Plaintiffs,<br><br>   v.<br><br>CITY OF PROVIDENCE and SARA SILVERIA in her capacity as Finance Director of the City of Providence,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 1:24-cv-00010-MSM-PAS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Before the Court is the defendant, City of Providence's, Motion for Summary Judgment. (ECF No. 25.) The plaintiffs, Spur Track Properties, LLC, Narragansett Promotions, Inc., Adalberto Alevarez, and Steven Medeiros (collectively, "Plaintiffs") allege that the Providence Police Department engaged in discriminatory enforcement activity targeting their business and patrons on the basis of sexual orientation. (ECF No. 14.) They bring this action pursuant to 42 U.S.C. § 1983 for alleged violations of the First, Fourth, and Fourteenth Amendments of the United States Constitution.

For the following reasons, the Court GRANTS Defendant's Motion for Summary Judgment.

# I.     BACKGROUND

The Court notes at the outset that the Plaintiffs did not submit a Statement of Disputed Facts specifically responding to the City's Statement of Undisputed Facts as required by DRI LR Cv 56.  Any properly supported facts set forth by the City that Plaintiffs have not expressly disputed with citation to record evidence are deemed admitted.  Fed. R. Civ. P. 56(a)(3).  The Court therefore accepts the City's supported statements of material fact as true to the extent they are substantiated by the record, do not rest on credibility determinations or legal conclusions, and are not contradicted by the Plaintiffs' submissions.  The Court has nevertheless viewed all evidence and factual inferences in the light most favorable to the Plaintiffs, as required on a defendant's motion for summary judgment.  *Cont'l Cas. Co. v. Canadian Univ. Ins.*, 924 F.2d 370, 373 (1st Cir. 1991).

The City's uncontroverted evidence establishes the following.  Spur Track owns the property located at 257 Allens Avenue and leases it to Narragansett, which operates The Mega-Plex.  The Mega-Plex is a sauna that also provides lockers and rooms for rent, showers, counseling, an adult video lounge, and sexual health and wellness services.  (ECF No. 25-2 at 16-17.)  The Mega-Plex's clientele consists largely of members of the LGBTQ+ community.  *Id.* at 12-13.

Other adult-oriented businesses operate in the immediate vicinity of the Mega-Plex: the Studio, the Bull Pen, Wonderland, and (formerly) Silhouettes.  *Id.* at 18-19.  The Studio caters to straight, gay, and bisexual patrons of both sexes, the Bull Pen serves the same mixed clientele, and Wonderland caters to all patrons "regardless of

2

sexual orientation." *Id.* at 18-21. The businesses' hours of operation generally overlap.[1] *Id.* at 19. All four businesses share a common parking area open to the public: a large rear lot and the Bay Street parking area.[2] *Id.* at 22, 51.

The security guard, Adalberto Nevarez, testified that anyone from the public may park in either lot to visit the businesses. *Id.* at 53. Beginning in early 2023 and continuing through early 2024, Providence Police Department officers had consistent presence in the parking areas described above. *Id.* at 65. There are no allegations that officers entered any of the businesses themselves, nor that they entered the parking lots when the businesses were closed. *Id.* at 54. Mr. Nevarez also testified about persistent criminal activity in the shared parking areas. *Id.* at 64. He described frequently removing "bad people" from the lots, including individuals engaged in drug use, panhandling, solicitation, and harassment of patrons. *Id.* at 60-63. In instances where he could not remove individuals himself, Mr. Nevarez contacted the police to escort them from the property. *Id.* at 64.

Mr. Nevarez further testified that he filmed 19 interactions with police and acknowledged that officers did not prevent him from speaking in those encounters. *Id.* at 86. Several videos depict officers on public roads while Mr. Nevarez addressed or confronted them from the rear lot. *Id.* at 107. In one exchange, Mr. Nevarez

---

[1] The Mega-Plex is open 24 hours per day; the Studio operates from 10:00 a.m. to 10:00 p.m.; the Bull Pen opens at 10:00 a.m. and closes at either 9:00 p.m. or 11:00 p.m.; and Wonderland opens at 5:00 p.m. and closes between 11:00 p.m. and 2:00 a.m. (ECF No. 25-2 at 19.)

[2] The City of Providence abandoned the Bay Street parking area.

admitted he sometimes sought police interactions to generate evidence for the lawsuit. *Id.* at 289. He testified that another gay-oriented business (in another location in Providence), the Eagle's Nest, offered similar services but did not experience comparable police presence. *Id.* at 302.

The Plaintiffs allege that these police encounters are not isolated, but stem from a policy or practice of targeted enforcement that officers learn through departmental training.[3] (ECF 28 ¶ 50.) According to the Plaintiffs, officers understand the Mega-Plex area to be populated by individuals from protected classes, including LGBTQ+ individuals and racial minorities, and view the areas as one of the "easiest" places to make arrests. *Id.*

The Plaintiffs' First Amended Complaint advances two causes of action: Count I, alleging a denial of equal protection under the Fourteenth Amendment in violation of 42 U.S.C. § 1983 and Count II, alleging a deprivation of civil rights under 42 U.S.C. § 1983. (ECF No. 14.) The Plaintiffs allege that the City of Providence engaged in targeted policing of the Mega-Plex, and its patrons based on the sexual orientation of those patrons. *Id.* They further assert that the City effected unlawful entries onto their private property in violation of the Fourth Amendment and infringed their First Amendment rights. *Id.*

---

[3] Plaintiffs assert that their evidence includes patron letter describing intrusive police encounters, security-staff testimony recounting years of alleged harassment, body-camera footage of warrantless vehicle searches, and sworn complaints to Internal Affairs. (*See* ECF 28 at 12–13.) Yet Plaintiffs submit neither body-camera footage nor any Internal Affairs complaints, leaving these assertions unsupported by specific, admissible evidence.

4

The City now moves for summary judgment. (ECF No. 25.)

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmovant, and a dispute is "material" if it could affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of identifying the basis for its motion and the portions of the record demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When the nonmovant bears the burden of proof at trial, the movant may satisfy its initial burden by showing an absence of evidence supporting the nonmovant's position. *Id.* Once that showing is made, the nonmovant must identify specific facts, supported by competent evidence, showing a genuine issue for trial; conclusory or self-serving assertions are insufficient. *Id.* at 322–24. Summary judgment is therefore appropriate where the nonmovant fails to make a sufficient evidentiary showing on an essential element of its case. *Id.*; *see also Theidon v. Harvard Univ.*, 948 F.3d 477, 494 (1st Cir. 2020); Fed. R. Civ. P. 56(c)(4).

### III.    DISCUSSION

#### A.    Standing

As a threshold matter, the City contends that plaintiffs Spur Track Properties, LLC, and Narragansett Promotions, Inc. (collectively, the "Corporate Plaintiffs") lack standing to maintain this suit because the constitutional claims they are asserting are on behalf of their patrons.  According to the City, the Corporate Plaintiffs fail to allege the requisite "close relationship" with their patrons and do not show that those patrons face any hindrance to bringing their own civil rights actions.  The City further contends that the First Amended Complaint contains no factual allegations establishing that the Corporate Plaintiffs themselves suffered a violation of their constitutional rights.

To prove standing, the party invoking a court's jurisdiction must show, with evidence appropriate to the stage of the proceeding, that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  The first and perhaps most important element of standing is that "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted).

Although the Plaintiffs' First Amended Complaint references third-party standing, the Corporate Plaintiffs do not rely exclusively on the constitutional rights

6

of their patrons to support standing.  Rather, the Corporate Plaintiffs contend that their claims arise from direct and independent injuries, including lost revenue, reputational harm, repeated trespasses upon the property, and the chilling of expressive conduct.  And, as set forth in the Affidavit of Steven Medeiros, the President of Narragansett Promotions, the Mega-Plex experienced a sustained and measurable decline in business performance directly attributable to the Providence Police Department's persistent and unwarranted presence, and Mr. Medeiros attests that the Mega-Plex would have realized materially greater revenues and membership growth absent this targeted law enforcement activity.  (ECF No. 28-4.)  The Corporate Plaintiffs therefore have adequately established a concrete and particularized injury sufficient to satisfy Article III's injury in fact requirement.

### B.    Equal Protection Violation (Count I)

The Equal Protection Clause of the Fourteenth Amendment "requires all persons similarly situated be treated alike." *Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 10 (1st Cir. 2013) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  To prevail on an Equal Protection claim under § 1983, a plaintiff must establish that the defendant acted with discriminatory intent and that the challenged conduct resulted in different treatment of similarly situated individuals. *Lopera v. Town of Coventry*, 652 F. Supp. 2d 203, 217 (D.R.I. 2009), *aff'd*, 640 F.3d 388 (1st Cir. 2011).  A showing of discriminatory intent requires evidence that the defendant selected or reaffirmed a particular course of action at least in part

7

because of, and not merely in spite of, its adverse effects on an identifiable group. *In re Subpoena to Witzel*, 531 F.3d 113, 118–19 (1st Cir. 2008).

The Plaintiffs allege that the Providence Police Department engaged in a pattern of conduct intended to suppress the business operations of the Mega-Plex and to harass its predominantly LGBTQ+ patrons based on their sexual orientation or gender identity. Such allegations, if proven, would raise substantial Equal Protection issues. The City responds that the record does not support a reasonable inference of discriminatory intent, that the Plaintiffs have failed to identify similarly situated businesses that were treated more favorably, and that the Plaintiffs therefore cannot establish an underlying constitutional violation.

On this record, the Plaintiffs have not produced sufficient evidence to permit a reasonable jury to find that the City's actions were motivated by discriminatory animus. Much of the material the Plaintiffs rely upon consists of unsworn letters, unsupported assertions, or documents lacking attestation, authentication, or foundation. Such submissions are not admissible evidence and cannot be considered at summary judgment. *See* Fed. R. Civ. P. 56(c), (e). An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and demonstrate that the affiant or declarant is competent to testify to the matters stated. Fed. R. Civ. P. 56(c)(4). Setting aside these inadmissible submissions, the remaining record evidence does not support a reasonable inference that the City's conduct was undertaken because of the sexual orientation or gender identity of the Mega-Plex's patrons or staff. The record contains

8

no statements, directives, or other indicia of discriminatory purpose, nor does it reflect enforcement decisions that cannot be explained by non-discriminatory considerations.

Equally significant, the Plaintiffs have not identified evidence that similarly situated businesses were treated more favorably. They do not point to other establishments with comparable size, operating hours, location, or history of police interaction that were spared similar enforcement activity. Absent evidence of differential treatment among appropriate comparators, the Plaintiffs cannot sustain an Equal Protection claim based on selective enforcement.

Accordingly, the Plaintiffs have failed to adduce evidence from which a reasonable jury could find intentional discrimination or unequal treatment of similarly situated parties. Their Equal Protection claim therefore fails as a matter of law, and the Court GRANTS the City's Motion for Summary Judgment on Count I.

## C.    Fourth Amendment (Count II)

The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, protects against violations of the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ...." U.S. Const. amend. IV; *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992). To establish an invasion of privacy, the plaintiff must have exhibited an actual, subjective expectation of privacy in the area entered. *Smith v. Maryland,* 422 U.S. 735, 740 (1979).

9

The Plaintiffs allege that the Department entered the Plaintiffs' private property without a warrant and conducted unreasonable searches thereon in violation of the Fourth Amendment.  The City moves for summary judgment on this claim arguing that there is no reasonable expectation of privacy in the subject areas.

The record reflects that all four businesses share common parking areas for their patrons.  These include two primary lots, the rear parking lot and the Bay Street parking area, both of which are used collectively by all four establishments.  The City presents substantial evidence that both parking areas constitute commercial property serving multiple businesses, and that they are freely accessible to the public.  The record further reflects that the interior portions of each lot are plainly visible from adjacent public streets and sidewalks.  According to the City's evidence, law enforcement officers routinely patrol the vicinity due to frequent service calls and elevated crime levels.

The Plaintiffs did not address the City's Fourth Amendment argument in their response to this Motion.  When a plaintiff fails to respond to a properly supported summary judgment motion, and the record discloses no genuine dispute of material fact, summary judgment is appropriate.  *Jakobiec v. Merrill Lynch Life Ins. Co.*, 711 F.3d 217, 226 (1st Cir. 2013) (quoting *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010)).  Here, the City has met its burden and the Plaintiffs have not "affirmatively point[ed] to specific facts that demonstrate the existence of an authentic dispute."  *Kenney v. Floyd*, 700 F.3d 604, 608 (1st Cir.2012) (internal quotation marks omitted).  Similarly, the Plaintiff's Statement of Disputed Facts

provides no lifeline, as it fails to meaningfully dispute facts and instead sets forth mere conclusory statements. (ECF No. 29.)

### D.    First Amendment Claim (Count II)

In Count II, Plaintiffs allege that Providence Police Department responded to a legitimate exercise of plaintiff Adalberto Nevarez's First Amendment right to film officers with physical force despite Mr. Nevarez not presenting a danger to the officers, himself, or anyone else, in violation of the First Amendment of the United States Constitution. [4]  The City argues that Mr. Nevarez's First Amendment rights were not violated because the record shows he was not prevented from filming officers, nor has he been prevented from speaking as evidenced by his own admissions.

Indeed, the undisputed evidence shows that Mr. Nevarez routinely filmed police activity without interference.  The Plaintiffs produced nineteen cellphone videos taken by Nevarez in the two-block area at issue, and none depict officers preventing him from recording.  Nevarez also admitted in his deposition that he filmed police more times than he could remember and that officers frequently allowed

---

[4] The Plaintiffs are bringing this claim in two parts.  As to the Corporate Plaintiffs, they allege: "by undertaking meritless enforcement activity against Plaintiffs, Defendants have unlawfully and substantially deprived Plaintiffs of rights secured by the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983."  ECF No. 14 ¶ 59.  As to Mr. Nevarez, the Plaintiffs allege, "PPD repeatedly prevented the filming of government action which was not impeding the ability of the government agents to properly conduct their assigned functions in violation of the First Amendment to the United States Constitution [...]" *Id.* ¶ 60.  As the First Amended Complaint contains no allegation that the business entity was prevented from filming, the allegation necessarily concerns Mr. Nevarez and is analyzed accordingly.

11

him to speak and question their actions. The City further relies on deposition testimony and video footage showing that Nevarez actively engaged officers, often inserting himself into their interactions with others and then alleging constitutional violation when they responded. The record reflects no instance in which Nevarez was prevented from filming or speaking.

Like the Fourth Amendment analysis above, Plaintiffs' opposition offered no response to the City's motion and fails to establish any genuine dispute of material fact. Accordingly, the City's motion for summary judgment on Plaintiffs' First Amendment Claims is GRANTED.

### E.    Municipal Liability

The Plaintiffs also allege that the City was liable for the police officers' conduct under *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978). Specifically, that the City maintained a policy or custom of conducting warrantless searches and seizures on the private property of establishments primarily serving LGBTQ+ patrons, purportedly to harass the businesses, their owners, and their customers under the guise of policing a high crime area. The Plaintiffs further allege that the City failed to train its officers on (1) proper practices for addressing alleged high crime areas, (2) First Amendment protections, and (3) the prohibition against using force in response to protected First Amendment activity.

To establish municipal liability and prevail on their *Monell* claim, it is not enough for Plaintiffs to allege that the City's alleged policy injured them. Rather, they must establish: (1) that they suffered a constitutional injury, and (2) that the

12

City authorized or maintained a custom of approving the unconstitutional conduct. *Monell*, 436 U.S. 658, 690; *see also Thompson v. Boggs,* 33 F.3d 847, 859 (7th Cir.1994). Absent an underlying constitutional violation, a *Monell* claim cannot lie.

The Plaintiffs' allegations, if proven, would raise serious constitutional concerns. But municipal liability under *Monell* requires more than the existence of an alleged policy or custom; it requires proof that such a policy caused a constitutional injury to the plaintiffs. Here, the record does not establish that Plaintiffs suffered a constitutional injury. The Plaintiffs' evidence is limited to conduct involving the Mega-Plex and the surrounding two-block area, which is insufficient to demonstrate a Citywide policy or custom. Nor does the record support Plaintiffs' failure-to-train theory, as Plaintiffs did not seek or produce evidence of training materials or deficiencies concerning First Amendment protections, policing of high-crime areas, or use-of-force practices. Accordingly, Plaintiffs' *Monell* claim fails as a matter of law.

### F.     Motion for Judgment on the Pleadings

The City moves for judgment on the pleadings with respect to Plaintiff Steven Medeiros. The City argues that, while he is a named plaintiff, there is no mention of Medeiros anywhere in the First Amended Complaint. Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In light of the Court's granting of the City's Motion for Summary Judgment, the Court DENIES AS MOOT the City's Motion for Judgment on the Pleadings. (ECF No. 25 at 5–6.)

13

## IV.    CONCLUSION

For all these reasons, the City's Motion for Summary Judgment (ECF No. 25) is GRANTED.  The City's Motion for Judgment on the Pleadings (ECF No. 25 at 5–6) is DENIED AS MOOT.

T IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge

March 30, 2026

14